UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>JUDD HAWK WEBSTER, )<br>)<br>Defendant. )<br>_____ ) | CASE NO.   05-217 M<br><br>DETENTION ORDER |

Offenses charged:

    Count I:    Conspiracy to Possess and Distribute Ephedrine, in violation of Title 21, U.S.C., Section 841(c)(2) and 846;

    Count II:    Conspiracy to Distribute MDMA, in violation of Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(C), and 846.

Date of Detention Hearing: May 9, 2005.

    The Court, having conducted a contested detention hearing pursuant to Title 18 U.S.C. § 3142(f), and based upon the factual findings and statement of reasons for detention hereafter set forth, finds that no condition or combination of conditions which the defendant can meet will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.  The Government was represented by Mike Lang.

1  The defendant was represented by Paula Deutsch.

2  The Government argued for detention based on elements of danger and risk of
3  flight. The Government indicated that the combined value of the drugs are estimated to be
4  worth over ten million dollars, United States currency, which is the largest such seizure
5  at the U.S.-Canadian border to date. The Government stated that the quantity and monetary
6  worth of the seizure raises the stakes and elevates the threat of danger for all parties
7  involved; the defendant, the co-conspirators, any potential witnesses, and the community
8  at large. The Government believes that the seriousness of the offense is magnified when
9  considering the number of lives ruined by the use of methamphetamine, thus magnifying the
10 danger to safety of the community.

11 The Government asserted that, although circumstantial, the weight of the evidence
12 ties all three of the defendants together in the conspiracy; evidence which includes a rented
13 U-Haul truck and connections to a storage locker which contained documents referencing
14 a fictitious company, several empty hockey bags, a shoe box, and seed bags which tested
15 positive for ecstasy .

16 Additionally, a Ford commercial box truck was used for smuggling drugs between
17 Canada and the United States. Upon border crossing into the United States, the box trucks
18 manifest indicated a final destination for delivery to a fictitious company, Northwest
19 Resale. Northwest Resale's address led FBI case agents to an empty field in Snohomish,
20 Washington. Documents referring to this same fictitious company were found in the storage
21 locker.

22 Both Webster and Pantoleon resided at the same residence in Oregon and
23 reportedly worked in the fishing industry together in Alaska. A man named Joel Little
24 verified this employment. It was of concern to the Government that a known offender to
25 the FBI, also by the name of Joel Little and perhaps the same individual giving employment
26 verification, had a van registered in his name, parked in the defendant's driveway. The

1 Government believes the verification by Little to be dubious noting that commercial Alaskan
2 fishing involves travel patterns similar to that of drug smuggling. Further buttressing the
3 Government's concerns of danger to the community, prior investigation reveals that a
4 January 2002 stop of the defendant in Oregon resulted in the seizure of eleven illegal
5 weapons including a machine gun, scanners, cell phones, two way radios, a global
6 positioning system device, and four hockey bags.

7 The defense argued for release of the defendant and concurred with the
8 recommendation of U.S. Pre-trial, indicating he may reside at the home of his grandparents.
9 The defendant was raised in Bellingham and has significant ties to this district. The
10 defendant's former place of employment, Dewey Valley Meat Company, which was owned
11 by the defendant's grandparents is no longer in business, however. Pertaining to the weight
12 of evidence as to this defendant, the defense asserts that the defendant has no ties to the
13 storage locker, and that the truck allegedly rented and driven by the defendant was driven
14 to a mall, not to pick up drugs.

## FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION

(1) There is probable cause to believe the defendant committed the conspiracy drug offense. The maximum penalty is in excess of ten years. There is therefore a rebuttable presumption against the defendant's release based upon both dangerousness and flight risk, under Title 18 U.S.C.§ 3142(e).

(2) Using the factors below, under Title 18 § 3142 (g), the Court considered the following:

    (a) <u>The nature and circumstances of the offense charged, whether the offense is a crime of violence or involves a narcotic drug.</u> The charge of Conspiracy to Possess and Distribute Ephedrine does

1  involve a series of inferences when taken together describe acts of
2  three persons working in concert to obtain very large quantities of
3  ephedrine for illegal distribution, which is historically
4  unsurpassed.

5  (b)  <u>The history and characteristics of the person,</u> including:
6  the person's character, physical and mental condition, family ties,
7  employment, financial resources, length of residence in the
8  community, community ties, past conduct, history relating to drug
9  or alcohol abuse.  The Court is not satisfied that there is suitable
10 housing available to the defendant; the grandparents were absent
11 from the hearing and therefore were not in a position to give the
12 Court reasonable assurances.  The Court also questions the
13 reliability of the person verifying the defendant's employment.
14 Further, the defendant has admitted to frequent marijuana use
15 which raises an elevated risk of nonappearance.

16 (c)  <u>Risk of danger to the community</u>.  Here, the defendant's alleged
17 role in this crime poses a danger to persons and/or the community
18 because of the immense quantity of drugs and its attendant street
19 value.  For this defendant to have been entrusted with the
20 responsibility inherent in this level of a large drug transaction,
21 there is a significant likelihood that his value to the organization is
22 great and thus the incentives to continue in criminal activity
23 persist, dramatically increasing a risk of danger, if not flight.

24 (3) Based upon the foregoing information, it appears that there is no
25 condition or combination of conditions that would reasonably assure

DETENTION ORDER
PAGE -4-

future Court appearances and/or the safety of other persons or the community.

**It is therefore ORDERED**:

(1) The defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

(4) The clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Pretrial Services Officer.

DATED this 17th day of May, 2005.

MONICA J. BENTON
United States Magistrate Judge

DETENTION ORDER
PAGE -5-